(Superior Court of Cincinnati—Special Term.)

### H. L. SIMMONS v. THE STANDARD PUBLISHING COMPANY.

*Evidence—Error in written contract by mutual mistake of parties—Admissibility
·of testimony to change after third parties without notice have become interested.*

On December 1, 1888, H. and the Standard Publishing Company entered into a
  written contract, by which the former was to be employed by the latter company
  for a period of three years, with the privilege of two additional years.  The con-
  tract therefore expired December 1, 1891, unless renewed, in which case  it ex-
  pired December 1, 1893.
·On June 3, 1892, the same parties entered into another contract in writing, for sim-
  ilar services, and in this contract it was provided that "this agreement is to con-
  tinue in force during the period of five years from expiration of the present con-
  tract·between said parties, dated December 1, 1888."
On April 22, 1895, by consent of all parties, S. was substituted in place of H. as the
  party contracting with the Standard Publishing Company.
Held—That the Publishing Company, as against Simmons, was estopped from show-
  ing by parol evidence that a "present contract" was not in existence when  the
  contract of April 22, 1895, was entered into, unless it could show also that Sim-
  mons was aware of this fact; and that in the absence of  such showing the  con-
  tract of Simmons would not expire until December 1, 1898.*

---

SMITH, J.

This is an action brought by plaintiff to enjoin the  defendant  from
·discharging the plaintiff from its employment.

So far as the question presented to me for decision is  concerned, the
facts of the case may be stated briefly as follows:

On December 1, 1888, the Standard Publishing Company entered in-
to a contract, in writing, with H. C. Hall, by which Hall was to have the
entire management of the advertising department of said company.  The
agreement was to continue in force for three (3) years, with the privilege
of a renewal·for two (2) additional years.  The contract, therefore, ex-
pired on December 1, 1891, unless  renewed for the additional two years.

On June 3, 1892, the same parties entered into another contract, in
writing, by which said Hall was to have charge of the advertising depart-
ment of the Standard Publishing Company; and in this contract it was
provided as follows:

"This agreement to continue in force during the  period of five years
from  expiration  of the present contract between said parties,  dated De-
cember 1st, 1888."

At the end of this contract appears in writing the following  memor-
andum:

"Cincinnati, April 2d, '95.

"By and  with  the  consent of  the Standard Publishing  Company, I
hereby sell and assign all my title and interest in this contract to  H.  L.
Simmons for value received."

And this memorandum is signed by  H. C. Hall and  Russell  Errett,
the president of the Standard Publishing Company.

The Standard Publishing Company claims that  the contract expired
at the end of five (5) years from the termination of  three (3) years  from
December 21st, 1888.  Whereas, the plaintiff contends that the contract
did not expire until five (5) years from  the expiration of the two  years

renewal provided for in the contract of December 1, 1888, which would be December 1, 1893, making the contract still in force between the parties until December 1, 1898.

The dispute between the parties grows out of the use of the word "present" in the contract of June 3, 1892. If at that date there existed, as recited in the contract of that date, a "present contract between said parties, dated December 1, 1888," the presumption is that it existed by virtue of the renewal for the additional two years provided for in the contract of December 1, 1888 The plaintiff contends that the Publishing Company can not be permitted to show by parol evidence that there was no "present contract," because such parol evidence would vary and contradict the express terms of the written contract; whereas the Publishing Company contends that as a matter of fact no renewal of the contract of December 1, 1888, was ever made, and that the word "present" was used in the contract of June 3, 1892, by mistake, the draft of the contract having been made prior to December 1, 1891.

The Publishing Company has offered evidence tending to show that no present contract was in existence either on June 3, 1892, or on April 22, 1895. To the introduction of this evidence the plaintiff objects. The case turns upon the question whether such evidence is admissible.

If evidence tending to show that in fact there was no "present contract" is admissible, it must be upon one of two grounds. 1. That its insertion was by mistake, and that either party is entitled to have the contract reformed and made to read as if the word "present" were in it; or 2nd, that the statement that a "present contract" existed is a mere recital of fact which may neverthelesss be disputed if the surrounding circumstances which may always be put in evidence, show that such fact did not exist.

In considering this question, however, it must be remembered that the contract of June 3, 1892, was between the Publishing Company and Hall, between whom the contract of renewal was made, if made at all, and both of whom would, therefore, be familiar with the fact; but that by the memorandum of agreement of April 22, 1895, by and with the consent of the Publishing Company, Simmons was substituted in place of Hall as a party to the contract of June 3, 1892, and that Simmons may or may not have known that there was no "present contract," as recited in the contract of June 3, 1892.

The contract of April 22, 1895, was what is known in law as a novation, by which one party to a contract is released from his obligations under it, and another party substituted in his place. It differs from the mere assignment of a chose in action, which does not require the assent of both parties to the original contract, whereas a novation does, and is, in effect, a new contract, between that one of the original parties who remains a party to the contract, and the new party who is taken in by way of substitution. No further consideration than the release of the outgoing party and the substitution of the incoming one is necessary to sustain the contract. 16 American & Eng. Ency. of Law, 862; 1 Beach on Modern Law of Contracts, section 786; 6 Harvard Law Review, 184; Bacon v. Daniels, 37 Ohio St., 279, 281.

As between the Publishing Company and Hall, if the pleadings properly present the question, there can be no doubt that evidence showing the insertion of the word "present" by mutual mistake would be admissible. But would it be admissible upon this ground against the contract by novation unless the party offering such evidence also offers to show that the substituted party was also aware of the mistake? It seems to me that upon the well settled principle of equity that relief will not be given unless the mistake is mutual, such evidence is not admissible.

In Pollock on Contracts, (6th Ed.) 498, Wald's Notes, it is stated and the statement is abundantly sustained by the authorities there cited:

"The court will not rectify an instrument when the result of doing so would be to affect interests already acquired by third parties on the faith of the instrument as it stood."

And in other cases the principle is differently stated, as follows:

"Courts of equity will not interfere to correct a mistake in a written instrument to the prejudice of a bona fide purchaser as he has at least an equal right to protection with the party laboring under the mistake." Gibson v. Cook, 2 Blatchford, 144, 150, a case as to the assignment of a patent right.

"It is a settled principle that a court of equity will not rectify a mistake in a written instrument by the aid of parol evidence except as between the original parties. As against bona fide purchasers without notice the instrument must stand as written."

Kilpatrick v. Kilpatrick, 23 Miss., 124, 129; Hewitt v. Powers, 84 Ind., 295, 299; Langdon v. Keith, 9 Vt., 299, 300.

It is urged by counsel for the Publishing Company, that Simmons in this case is not a bona fide purchaser within the sense in which that term is used in the authorities cited, for the reason that a bona fide purchaser in equity means one having the legal title, and Simmons in this case has no legal title.

It seems to me that the rule thus contended for is too narrow, and that the true rule is as stated in 1 Storys' Eq. Jur. (13th Ed.), sec. 140, last paragraph of first column of note at page 151, viz: "Indeed the rule may probably be stated in broader terms—that mistake whether arising upon a written or a verbal contract, will not be corrected against an innocent third person who has acquired a title or a right in reliance upon the outward aspect of the contract, such right or title arising out of the same as though there were no mistake."

No other proposition it seems to me could be tenable without, as previously stated, violating the settled principle of equity that no mistake could be corrected unless it is mutual.

The next inquiry is: Is the statement that a "present contract" existed, a mere recital of fact which nevertheless may be disputed by showing the surrounding circumstances? "As it is a leading rule in regard to written instruments that they are to be interpreted according to their subject matter, it is obvious that parol or verbal testimony must be resorted to, in order to ascertain the nature and qualities of the subject to which the instrument refers."—Greenleaf on Evidence, section 286. And in the note to the section it is said: "In the term 'subject' in this connection text writers include everything to which the instrument relates, as well as the person who is the other contracting party, or who is the object of the provision, whether it be by will or deed."

In obedience to these rules we find a class of cases where, when an instrument read with reference to the surrounding circumstances is found to contain a description of a subject matter, and the description is partly true and partly false, the false description is rejected, and the instrument takes effect if a sufficient description remains to ascertain its application. "It is sufficient that enough remains to show plainly the intent." "The rule is derived from the maxim, 'Falsa demonstratio non nocet cum de corpore constat."

Applying this rule to the present case it is possible that as between the Publishing Company and Hall, the description of the collateral contract as "the present contract between said parties, dated December 1888," may be held to be partly true and partly false, and that the word "present" being a false word may be rejected. But conceding this to be true,

for the sake of the argument, does the rule apply as between the Publishing Company and Simmons? The principle upon which the rule is based, it seems to me, will answer the question.

The evidence is admitted, so that the court having all the circumstances before it which the parties to the contract had before them, may read it as the parties intended it to be read. If false or meaningless words are in the contract, they are rejected, because the court assumes the parties intended they should be rejected. The court simply aims to carry out the intention of the parties. In all of the cases of this class, however, the question arose as between parties to the contract who were aware of all the surrounding circumstances. But no case has been cited, and after considerable search I have not been able to find one, where this rule is applied to nullify a statement of fact in a contract by showing merely that one of the parties knew it did not exist. Unless in this case it can be shown that Simmons, as well as the Publishing Company, knew there was no "present contract," what right has the court to read the word "present" out of the contract for the purpose of carrying out the intention of the parties?

In Bigelow v. Capen, 145 Mass., 273, after reciting the rule as to rejecting the false part of a description of a subject matter, it was held that "where a note described in a mortgage of personal property has been renewed, this fact must be shown, and the security applied to the note as thus renewed. Conversely, where there has been a substitution for the original note, which was the foundation of the liability of the mortgagor, and the parties to the mortgage describe the original note, either by accident or mistake, as to the liability, this error may be shown, and the security applied to the existing liability." But, in justifying this action, the court uses this significant language: "Nor is any injury done to third persons. They are informed of the exact amount of the claim of the plaintiff upon the property of his and their debtor, even if such claim is not described with entire accuracy. There is no evidence that by this any person has been misled; and we have no occasion to consider whether there may not be cases where, if one were misled by the carelessness or inaccuracy of another, the person so misleading might not be estopped thereby from proving the exact character of his transaction with the mortgagor."

In Brady et al. v. Cassidy et al., 104 N. Y., 155, Cassidy purchased from the executors of Brady "the entire manufactured stock now on hand at foundry and store rooms." It appeared that some of this stock was subsequently taken away by parties who had previously purchased it. The executors therefore were unable to deliver all the stock on hand. In an action for damages, the court held that the contract could not be changed as to its terms by parol evidence that the executors knew that part of the stock had been previously sold, unless it were also shown that Cassidy was informed of this fact. The language of the court is:

"Whatever notion might have been entertained as to the understanding of the plaintiffs in respect thereto, there was not the slightest evidence to show that the defendant had any reason to suppose that the contract had any other meaning than that expressed by the literal signification of its language.

"It is not enough to render parol evidence competent that there are circumstances known to one of the parties, but unknown to the other, which might have influenced such party in making a contract, but to create an ambiguity that opens such a contract to parol explanation, it must be established by proof of circumstances known to all of the parties to the agreement and available to all in selecting the language employed to express their meaning."

This citation is directly in point, and if it correctly expresses the law, is decisive of this case.

I am well aware of the rule that recitals of fact may sometimes be explained and even contradicted, such as the consideration and date of a deed and others of a similar character. But it is evident that in all of these cases the facts allowed to be proven are known to both parties, and, therefore, the rule is not in conflict with the principle declared in Brady v. Cassidy, and in stating the rule, Mr. Greenleaf distinctly says that the recitals of fact which may be so explained or contradicted must be such as on other principles the party is not estopped to deny. Greenleaf on Evidence, sec. 285. In this case the other principles referred to estop the Publishing Company from denying there was no present contract in existence, unless it can be shown that Simmons was also aware of this fact.

It may be contended that the date of a contract may always be contradicted. But however this may be, when the date of a contract in writing is referred to in the body of the contract as fixing certain rights, it can not be altered or varied by parol evidence. Joseph v. Bigelow, 4 Cushing, 87.

The question presented by this case has been argued with great ability, ingenuity and learning by counsel on both sides, and after carefully considering their arguments and making a further examination for myself, my best judgment is that the evidence offered is inadmissible against Simmons, unless it is further offered to show that Simmons was aware there was no "present contract" in existence.

Edward Barton, for Simmons.

G. H. Wald and J. J. Muir, for Publishing Company.